Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 9068 | DATE | 12/1/2004 |
| CASE TITLE | MARK L. DANIELS vs. UNITED PARCEL SERVICE, INC. | | |
| MOTION | [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.] | | |

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: UPS' motion for summary judgment [doc. no. 26-1] is granted. This is a final and appealable order. This case is terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 02 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | rbf | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| CG | courtroom deputy's initials | 2004 DEC -2 AM 8:25 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK L. DANIELS, )
 )
    Plaintiff, ) No. 02 C 9068
 )
v. ) Judge Ronald A. Guzmán
 )
UNITED PARCEL SERVICE, INC., )
 )
    Defendant. )

DOCKETED
DEC 0 2 2004

## MEMORANDUM OPINION AND ORDER

Mark Daniels filed a one-count complaint against United Parcel Service, Inc. ("UPS"), alleging that it discharged him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* UPS has moved pursuant to Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts[1]

In May 2001, Mark Daniels, an African-American, worked for UPS as a plant engineering mechanic ("PE"). (Def.'s LR 56.1(a) Stmt. ¶¶ 1, 5.) Daniels worked primarily at UPS' Metro Chicago District in Chicago, Illinois (*Id.* ¶ 5.)

UPS also has a facility in Hodgkins, Illinois known as the Chicago Area Consolidated Hub or CACH. (*Id.* ¶ 9.) If CACH needs PEs for weekend work, it asks other UPS districts to post overtime sign-up sheets in their facilities. (*Id.* ¶ 10.) PEs who want overtime sign up and CACH is told whom to expect. (*Id.*)

A sign-up sheet was posted at the Metro facility seeking PEs to work at CACH on Sunday,

---

[1] Unless otherwise noted, the following facts are undisputed.

May 27, 2001. (*Id.* ¶ 11.) Daniels did not sign up. (*Id.*) Nonetheless, he says he worked an eight-hour, double-time shift at CACH on that date. (*Id.* ¶ 13.)

In June 2001, Daniels asked a UPS supervisor why he had not been paid for his May 27, 2001 overtime work. (*Id.* ¶ 14.) Daniels' time card for that date had two time punches that read "May 27 8:15" and "May 27 17:17." (*Id.* ¶¶ 17, 20.) Those time punches were in the format used by the time clocks in the Metro facility. (*Id.* ¶ 23.) The CACH time clocks use a "year-month-date-time" format. (*Id.*)

On June 21, 2001, PE Manager Bill Beach and Security Supervisor Dave Nolimal questioned Daniels about his claim that he worked on May 27, 2001. (*Id.* ¶ 28.) Daniels submitted a written statement in which he said, among other things, that he: arrived at the CACH guard shack between 6:45 and 8:15 a.m., was admitted to the building by the guard, went to the PE office and received his work assignment, returned to the PE office at the end of the day and put his time card in the time card rack, and left CACH through the guard shack between 5:10 and 5:40 p.m. (*Id.* ¶ 29; *id.*, Ex. K, Nolimal Dep., Ex. 1, Daniels Stmt.)

In May 2001, there was only one guard shack, number two, through which employees without CACH IDs could enter the facility on weekends. (*Id.* ¶ 31[2]; *id.*, Ex. K, Nolimal Dep., Ex. 1, Harris Stmt.) Daniels did not have a CACH ID. (*Id.* ¶ 32.) PE Manager Neal reviewed the security videotapes taken at guard shack number two during the times that Daniels said he entered and exited, but he did not see Daniels. (*Id.* ¶¶ 44-45.)

Neal also reviewed the videotapes taken of the door to the CACH PE office during the times

---

[2]Plaintiff's statement that "[h]e did not see any other entrances which were closed or which were restricted to CACH employees," does not controvert the fact UPS asserts in this paragraph. (*See* Pl's LR 56.1(b)(3)(A) Stmt. ¶ 31.)

Daniels said he was there, but Daniels was not on the tapes. (*Id.* ¶¶ 46-47.) Moreover, UPS interviewed the PEs who worked at CACH on Sunday, May 27, 2001, all of whom said they had not seen Daniels. (*Id.* ¶ 37.)

In his statement, Daniels said the person in the PE office, who he assumed was a supervisor and gave him his work assignment, was a white male in his mid-40s. (*Id.* ¶ 38.) Donovan Williams, who is a Black male in his 30s, was the only PE supervisor on duty at CACH on May 27, 2001. (*Id.* ¶ 40.) Williams said he did not see Daniels that day. (*Id.* ¶ 41.)

On June 22, 2001, Neal terminated Daniels for submitting a fraudulent time card. (*Id.* ¶ 49.) The same day, Daniels filed a grievance challenging his termination. (*Id.* ¶ 52.)

The first step in the grievance procedure was a June 28, 2000 meeting among Daniels, Labor Manager Gary Landem and Local 701 Business Agent Jon Baker. (*Id.* ¶ 56.) During the meeting, Landem told Daniels that if he resigned from UPS, UPS would not challenge any request he made for unemployment. (*Id.* ¶ 60.) Daniels exercised that option and resigned from UPS that day. (*Id.* ¶ 61.)

By resigning, Daniels forfeited his right to continue the grievance process. (*Id.* ¶ 62.) Had Daniels continued with the grievance process, he might have won reinstatement to his job. (*Id.* ¶ 64.)

Daniels now contends that he was discharged because of his race, not his conduct.

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the

matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

Having no direct evidence of discrimination, Daniels must comply with the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), if he is to defeat UPS' motion. *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 203 (7th Cir. 1996). To do so, Daniels must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he was meeting UPS' legitimate expectations; (3) he suffered an adverse employment action; and (4) UPS treated similarly situated employees outside the protected class more favorably. *Id.* at 204; *Foster v. Arthur Andersen, LLP*, 168 F.3d 1029, 1035 (7th Cir. 1999).

If Daniels makes a *prima facie* case, the burden of production shifts to UPS to articulate a legitimate, nondiscriminatory reason for his discharge. *Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). If UPS carries its burden, Daniels must show that the proffered reason is merely a pretext. *Id.*

As an initial matter, UPS argues, there is no evidence to suggest that Daniels suffered an adverse employment action. An adverse employment action is one that causes "a materially adverse change in the terms or conditions of... employment." *Spring v. Sheboygan Sch. Dist.*, 865 F.2d 883, 885 (7th Cir. 1989) (emphasis omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that

4

might be unique to a particular situation." *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). Daniels admits that he resigned. (*See* Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 61.) Thus, UPS argues that he cannot satisfy the second element of the *prima facie* case.

Daniels contends, however, that he resigned under duress. (*See id.*) Because UPS gave him only two choices, resignation or termination, Daniels says he had no choice but to resign.

Even if we construe Daniels' resignation as a constructive discharge, as he urges us to do, he would still have to satisfy the last element of the *prima facie* case to survive UPS' motion. That he has not done. Daniels has offered no facts to suggest that UPS retained any non-Black employee who it believed had falsified his hours. In fact, it is undisputed that UPS terminated a non-Black employee, Charles Szachowicz, in October 2001 for that very conduct. (*See id.* ¶ 68.)

Though both were fired for dishonesty, Daniels argues that Szachowicz received better treatment because he was "allowed" to file a grievance, which ultimately resulted in his reinstatement. It is undisputed, however, that Daniels was also allowed to, and did, file a grievance contesting his termination. (*See id.* at 52.) The grievance process ended when Daniels resigned; a result he should have foreseen, given his asserted familiarity with the grievance procedure. (*See id.* ¶¶ 55, 62.) There is no evidence that UPS discouraged Szachowicz from resigning or otherwise encouraged him to fight for reinstatement. Absent such evidence, Daniels has not demonstrated that a similarly situated employee outside of the protected class received more favorable treatment, a required element of the *prima facie* case.

Moreover, even if Daniels had made a *prima facie* case, his claim would still be doomed by the dearth of pretext evidence. UPS' reason for firing Daniels is pretextual if it is "factually baseless, [was] not the actual motivation for the discharge . . . , or [is] insufficient to motivate [it]." *Testerman*

*v. EDS Technical Prods., Corp.*, 98 F.3d 297, 303 (7th Cir. 1996). There is nothing in the record to support the inference that UPS' proffered reason for firing Daniels was pretextual. On the contrary, the record is filled with undisputed facts that suggest UPS honestly believed Daniels falsified his hours: Daniels did not sign up to work at CACH on May 27, 2001 (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 11), the time punches on his time card for that day were in a format that did not match the CACH time clock (*id.* ¶¶ 17, 20, 23), the security videotapes from the CACH facility contradicted Daniels' statement about the times he entered and exited the facility and the times he visited the PE office (*id.* ¶¶ 31-32, 44-47; *id.*, Ex. K, Nolimal Dep., Ex. 1, Harris Stmt.), the PEs who worked at CACH on Sunday, May 27, 2001 said they did not see Daniels that day (*id.* ¶ 37) and Donovan Williams, the only PE supervisor on duty at CACH on May 27, 2001, said he did not see Daniels that day (*id.* ¶¶ 40-41). Because Daniels has no evidence of pretext, his race discrimination claim would still be dismissed, even if he had made a *prima facie* case.

## Conclusion

For all of the reasons stated above, there is no genuine issue of material fact as to Daniels' Title VII claim against UPS, and UPS is entitled to judgment as a matter of law. UPS' motion for summary judgment [doc. no. 26] is, therefore, granted. This is a final and appealable order.

SO ORDERED                ENTERED: 12/1/04

HON. RONALD A. GUZMAN
United States District Judge